John B. Scherling (SBN 122234)
Scott H. Davison (SBN 228807)
SUGHRUE MION, PLLC
501 West Broadway, Suite 1600
San Diego, California 92101-3595
Telephone: 619.238.3545
Facsimile: 619.238.4931
jscherling@sughrue.com
sdavison@sughrue.com

William H. Mandir (admitted *pro hac vice*)
John F. Rabena (admitted *pro hac vice*)
Carl J. Pellegrini (admitted *pro hac vice*
Chandran B. Iyer (admitted *pro hac vice*)
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: 202.293.7060
Facsimile: 202.293.7860
wmandir@sughrue.com
jrabena@sughrue.com
cpellegrini@sughrue.com
cbiyer@sughrue.com

Attorneys for Plaintiff
GIRAFA.COM, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

GIRAFA.COM, INC.,

Plaintiff,

v.

ALEXA INTERNET, INC.; NIALL O'DRISCOLL,

Defendants.

Case No.: 08-2745 RMW (RS)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD CLAIM FOR RELIEF**

Date: September 5, 2008
Time: 9:00 a.m.
Dept: 6, 4th Floor
Judge: Honorable Ronald M. Whyte

## TABLE OF CONTENTS

**I. INTRODUCTION AND ISSUES TO BE DECIDED** ........ 1

**II. FACTUAL BACKGROUND** ........ 2

**III. LEGAL ARGUMENT** ........ 4

- **A. Defendants' Motion Is Barred By California Civil Procedure Code § 425.17** ........ 4
- **B. Girafa Has A Probability of Success on The Merits of Its Third Claim For Relief For Unfair Competition** ........ 7
  - **1. § 17200 Addresses Bad Faith Patent Infringement Litigation** ........ 8
  - **2. Alexa Initiated the Texas Action in Bad Faith** ........ 13
    - **a. Claims and Specification of the '548 Patent** ........ 14
    - **b. Prosecution History of '548 Patent** ........ 15
    - **c. Alexa's Knowledge of Girafa's Technology** ........ 17
    - **d. Alexa Cannot Assert Infringement of the '548 Patent in Good Faith** ........ 19

**IV. CONCLUSION** ........ 20

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*In re Acacia Media Technologies Corp.*, 2005 U.S.Dist. LEXIS 37009 (N.D. Cal 2005) .......... 8, 9, 10, 12

*Allergan Sales, Inc., v. Pharmacia & Upjohn, Inc.*, 1997 U.S.Dist. LEXIS 7648 (S.D. Cal. 1997) .......... 12

*Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979) .......... 9

*Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998) .......... 9, 12

*Monolithic Power Systems, Inc. v. O2 Micro International Ltd.*, 2007 U.S.Dist. LEXIS 22556 (N.D. Cal. 2007) .......... 10, 12

*Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) .......... 19

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industrial, Inc.*, 508 U.S. 49 (1993) .......... 9

**STATE CASES**

*Brill Media Co., LLC v. TCW Group, Inc.*, 132 Cal. App. 4th 324 (2005) .......... 4, 6, 20

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) .......... 8, 12, 20

*Committee On Children's Television v. General Foods Corp.*, 35 Cal. 3d 197 (1983) .......... 8

*Farmers Insurance Exch. v. Sup. Ct.*, 2 Cal. 4th 377, 377 (1992) .......... 8

*Hi-Top Steel Corp. v. Lehrer*, 24 Cal.App.4th 570 (1994) .......... 11

*Klein v. Earth Elements, Inc.*, 59 Cal.App.4th 965 (1997) .......... 8

*Metcalf v. U-Haul, International*, 118 Cal.App.4th 1261 (2004) .......... 4, 5

*Moore v. Shaw*,
116 Cal.App.4th 182 (2004) ....................21

*Navellier v. Sletten*,
29 Cal. 4th 82 (2002).................... 4

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
151 Cal.App.4th 688 (2007) ....................4, 13

*Pacific Gas and Electric Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990)....................12

*Rubin v. Green*,
4 Cal. 4th 1187 (1993)....................12

*Simpson Strong-Tie Co. Inc. v. Pierce Gore*,
162 Cal.App.4th 737 (2008) ....................5, 6

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ....................1, 8

Cal. Civ. Code § 47 ....................10, 11

Cal. Code Civ. Pro. § 425.16....................1, 3

Cal. Code Civ. Pro. § 425.17 ....................1, 4, 5, 6

Cal. Code Civ. Pro. § 128.5(b)....................21

## I. INTRODUCTION AND ISSUES TO BE DECIDED

Plaintiff Girafa.com, Inc. ("Girafa") commenced this action for declaratory relief of non-infringement and invalidity, and unfair competition under Cal. Bus. & Prof. Code § 17200, on June 2, 2008. Defendants Alexa Internet, Inc. ("Alexa") and Niall O'Driscoll ("O'Driscoll") now bring their motion to strike, contending that the unfair competition claim is improper and should be stricken based on the California Anti-SLAPP statute, Cal. Code Civ. Pro. § 425.16.

In ruling on defendants' motion the Court must determine, first, whether Alexa's filing of a patent infringement action in Texas is the type of conduct that the California Legislature intended the § 425.16 motion to strike to protect. The second issue for the Court is whether, even if the Texas action is within the zone of protected conduct, the circumstances support a claim for unfair competition under Cal. Bus. & Prof. Code § 17200.

Here, Alexa's allegation of patent infringement in the Texas action is the type of representation of fact about a competitor's goods or services that, pursuant to Cal. Code Civ. Pro. § 425.17(c), has been excepted from the type of conduct to be protected by a § 425.16 motion to strike. Even if the allegation of patent infringement were the proper subject of the § 425.16 motion, Girafa's allegations and evidence are more than sufficient to demonstrate the "minimal merit" required for the unfair competition claim to proceed.

The '548 patent clearly and unequivocally does not cover Girafa's technology. Accordingly, Alexa's allegations of infringement in the Texas action necessarily constitute bad faith sham litigation, and the only reasonable inferences are that they are intended to hinder Girafa's defense in the Delaware action and are made in an attempt to drive Girafa out of business. The Texas action initiated by Alexa is bad faith litigation that, even if it does not explicitly violate the antitrust laws, violates the "policy or spirit" of those laws, and thus constitutes unfair competition under § 17200.

## II. FACTUAL BACKGROUND

Girafa is a Delaware corporation having a principal place of business in Israel. Girafa was formed in 1999, and is based largely on the technology protected by its United States Patent No. 6,864,904 ("the '904 patent"). Exhibit A (March 7, 2008 Declaration of Shirli Ran in the Delaware action (Redacted Public Version)) at ¶¶ 3, 4.[1] Girafa's patented technology allows Internet users to preview a "thumbnail image" (*i.e.*, an image smaller than the original) of a hyperlinked URL without leaving the page they are viewing and without accessing or loading the hyperlinked page. *Id.* at ¶ 3. After releasing its thumbnail services in 2000, Girafa quickly became an industry leader in revolutionizing the experience of information search and Web navigation on the Internet. *Id.* Girafa's patented technology has won great accolades from various industry analysts, and has made the browsing experience more user-friendly, productive and efficient. *Id.* at ¶¶ 3, 6-8, 16.

Alexa, an Amazon.com company, is a California corporation with a principal place of business in San Francisco, California. Alexa provides a search engine website that not only uses thumbnail images, but also sells thumbnail images in direct competition with Girafa. Exhibit A at ¶¶ 21, 22, 25. According to the Alexa website, defendant O'Driscoll is the Chief Executive Officer of Alexa.

On December 5, 2007 Girafa filed, in the United States District Court for the District of Delaware, a complaint for patent infringement against a number of defendants, including Alexa, alleging infringement of the '904 patent, which is entitled "Framework For Providing Visual Context to WWW Hyperlinks" (*Girafa.com v. Amazon Web Services, LLC, et al.*, C.A. No. 07-787-SLR)

---

[1] Copies of all referenced exhibits including, for the Court's convenience, copies of unreported decisions cited herein, are included as exhibits to the Declaration of John B. Scherling in Support of Plaintiff's Oppositions to Defendants' (1) Motion to Dismiss Plaintiff's Third Claim for Relief Under Fed. R. Civ. P. 12(b)(6), (2) Special Motion to Strike Plaintiff's Third Claim for Relief and (3) Motion to Dismiss, Transfer or Stay.

("the Delaware action"). On March 13, 2008, Girafa filed a motion for preliminary injunction (the "PI Motion") against several parties, including Alexa, in the Delaware action. Exhibit O.

On March 21, 2008 Alexa filed, in the United States District Court for the District for Eastern District of Texas (Marshall Division), a complaint for patent infringement alleging that Girafa infringes United States Patent No. 6,282,548 entitled "Automatically Generate And Displaying Metadata As Supplemental Information Concurrently With The Web Page, There Being No Link Between Web Page And Metadata" ("the '548 patent") (*Alexa Internet, Inc. v. Girafa.com, Inc.*, No. 2:08-cv-121) ("the Texas action").[2]

As discussed in more detail below, the claims, specification and prosecution history of the '548 patent limit the claims of the '548 patent to metadata about a *currently displayed* web page. The claims, specification and prosecution history of the '548 patent therefore preclude any interpretation under which Girafa's technology could be considered infringement, inducement of infringement, or contributory infringement by Girafa's technology, which is about *linked* pages. Exhibit B at ¶¶ 23-30.

Accordingly, despite the clear inapplicability of the '548 patent to Girafa's technology, in retaliation for Girafa's filing of the Delaware action and PI Motion, and knowing that continued infringement of the '904 patent severely and irreparably may damage Girafa within the year, Alexa filed the Texas action to put extreme financial pressure on Girafa to gain improper business and litigation advantages and attempt to force Girafa out of business. *See* Exhibit C (March 7, 2008 Declaration of Shirli Ran in Support of Plaintiff Girafa.com, Inc.'s Motion for Preliminary Injunction (sealed version)) at ¶¶ 4, 24, 25, 26, 28.

---

[2] Girafa respectfully requests that that Court take judicial notice of the Delaware action and the Texas action pursuant to Rule 201 of the Federal Rules of Evidence. Copies of the complaints in each of those actions are attached to the Declaration of John B. Scherling as Exhibits D and E.

## III. LEGAL ARGUMENT

Section 425.16 of the California Code of Civil Procedure "arose out of legislative concern that large private interest plaintiffs were using meritless tort actions to deter or punish individual activists who opposed their views." *Metcalf v. U-Haul, Int'l*, 118 Cal. App. 4th 1261, 1264 (2004). Thus, the statute permits early intervention -- via a motion to strike -- in lawsuits alleging "unmeritorious causes of action" implicating freedom of speech. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699 (2007).

The moving defendant on a § 425.16 motion to strike carries the initial burden "to demonstrate that the challenged cause of action arises from protected activity." *Brill Media Co., LLC v. TCW Group, Inc.*, 132 Cal. App. 4th 324, 329 (2005). Here, although filing a lawsuit can be within the zone of protected activity, the Texas action initiated by plaintiff is not within the letter or the spirit of the types of lawsuits that the California Legislature intended the motion to strike to redress.

If a defendant carries its initial burden of demonstrating that the challenged cause of action is the type to which § 425.16 may apply, the burden then shifts to the plaintiff to demonstrate that the allegations of the complaint have "the 'requisite minimal merit' to allow the lawsuit to proceed." *Brill Media*, 132 Cal. App. 4th at 328; *see also Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002). Here, as set forth below, Girafa's unfair competition claim against defendants is well-grounded, both legally and factually.

### A. Defendants' Motion Is Barred By California Civil Procedure Code § 425.17

Because the California Legislature perceived a "disturbing abuse" of § 425.16 motions, it enacted Cal. Code Civ. Pro. § 425.17, effective in 2004, which provides a number of exceptions

barring those motions.[3]  Section 425.17(c), in particular, makes the Anti-SLAPP statute "inapplicable to 'any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct' if the statement or conduct (1) consists of a representation of fact about that person's or a competitor's business operation, goods or services; (2) is made or engaged in to obtain commercial transactions in the person's goods or services, and (3) is directed to an actual or potential customer."  *Metcalf*, 118 Cal. App. 4th at 1265.[4]

---

[3]      "The Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16.  The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through the abuse of the judicial process or Section 425.16."  Cal. Code Civ. Pro. § 425.17(a).  The legislative history reveals criticism that the large corporations were invoking the Anti-SLAPP statute "to delay and discourage litigation against them by filing meritless SLAPP motions, using the statute as a litigation weapon;" thus, § 425.17 was necessary "to stop corporate abuse of the statute and return Section 425.16 to its original purpose of protecting a citizen's rights of petition and free speech from the chilling effect of expensive retaliatory lawsuits brought against them for speaking out."  *See Simpson Strong-Tie Co. Inc. v. Pierce Gore*, 162 Cal. App. 4th 737, 757 (2008).

[4]      Cal. Code Civ. Pro. § 425.17(c) provides in full:

"Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:

(1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.

(2)  The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue."

As noted above, the moving defendant bears the initial burden on a special motion to strike of demonstrating that the challenged cause of action "is within the class of suits subject to a motion to strike under section 425.16." *Brill Media*, 132 Cal. App. 4th at 329. Accordingly, the "common sense" conclusion is that defendants have the burden of proving that § 425.17(c) does not bar their Anti-SLAPP motion. *Id.* at 328, 330-31.[5] And here the common sense conclusion is that § 425.17(c) bars defendants' Anti-SLAPP motion.

Initially, the conclusion that Alexa's conduct in filing the Texas action is within § 425.17(c) is confirmed by the *Brill Media* case. In *Brill Media*, the defendants asserted that their conduct -- the filing of an involuntary bankruptcy petition -- was protected by the right of petition. 132 Cal. App. 4th at 340. The court in *Brill* recognized that, while normally filing a lawsuit, such as an involuntary bankruptcy petition, is within the exercise of the right to petition, it does constitute "conduct" within the meaning of § 415.17(c). *Id.*

Moving on to the first element of § 425.17(c), Girafa and defendant Alexa, a subsidiary of Amazon.com, Inc., unquestionably are competitors. Exhibit A at ¶¶ 21, 22, 25. And, with respect to the conduct giving rise to this case, in the complaint in the Texas action Alexa unquestionably makes a statement about Girafa's goods or services, namely that they infringe the '548 patent. Exhibit E at ¶¶ 9, 11, 15, 19 (Girafa makes, uses, sells, offers for sale in the United States, and/or imports into the United States "computer-related products and services, including without limitation, its Girafa Toolbar and Girafa Thumbnail Service, that infringe the '548 patent.").

Alexa's conduct also satisfies the second element of § 425.17(c) as articulated in *Metcalf*. Common sense clearly dictates that, in bringing the Texas action, one of the results that Alexa hopes to achieve is impeding or barring sales of Girafa products and, thereby, "promoting, or securing sales . . . or commercial transactions in," Cal. Code Civ. Pro. § 425.17(c)(1), Alexa's goods or services.

---

[5] *But see Simpson Strong-Tie Co.*, 162 Cal. App. 4th at 747-49 (plaintiff bears burden of establishing applicability of § 425.17(c)).

*See* Exhibit E at ¶¶ 12, 13, 16, 17, 20, 21 (alleging injury to Alexa's "business and property rights" and irreparable harm from Girafa's alleged infringement of '548 patent). Most obviously, Alexa, as a competitor of Girafa, certainly stands to obtain increased sales if it were to succeed in its attempt to put Girafa out of business.[6] Moreover, in diverting Girafa resources to defending meritless sham litigation in Texas during the pendency of the Delaware action, Alexa stands to increase the odds of prevailing in the Delaware action, further increasing its sales and commercial transactions.

Finally, with respect to the third element, Alexa's conduct in filing the Texas action is intended to reach "an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." A lawsuit, unlike a statement made in private, is public. The allegations in the complaint essentially are directed to the public at large, including actual and potential customers of the parties. Moreover, even if the allegations in the Texas action were not public, they were directed to Girafa as a potential licensee of the '548 patent and therefore as a potential Alexa customer.

In sum, Alexa's conduct in filing the Texas action is the type of activity between commercial competitors that § 425.17(c) was intended to address. Defendants therefore are precluded from pursuing a § 425.16 Anti-SLAPP motion to strike.

**B.      Girafa Has A Probability Of Success On The Merits Of Its Third Claim For Relief For Unfair Competition**

Even if § 417.25(c) did not apply to bar defendants' Anti-SLAPP motion, Girafa's unfair competition claim is legally and factually on solid ground, and defendant's motion should be denied for this reason as well.

---

[6]      According to the Amazon.com: Alexa Site Thumbnail FAQs, Alexa charges $0.20 per 1,000 thumbnail URLs. Exhibit F.

**1. <u>§ 17200 Addresses Bad Faith Patent Infringement Litigation</u>**

An unfair competition claim under Cal. Bus. & Prof. Code § 17200 encompasses a wide range of conduct. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) ("the unfair competition law's scope is broad"). "[I]t does not proscribe specific practices," but rather encompasses "'any *unlawful*, *unfair* or *fraudulent* business act or practice.'" *Id.* (quoting Cal. Bus. & Prof. Code § 17200) (emphasis added).[7] Thus, § 17200 establishes "three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech*, 20 Cal. 4th at 180.

Without conceding that Alexa has not violated the "unlawful" or "fraudulent" varieties of unfair competition,[8] Alexa's conduct in bringing the Texas action at a minimum is well within the "unfair" type of wrong encompassed by § 17200.

"[T]he 'unfair' standard under § 17200 is broad by design." *In re Acacia Media Technologies Corp.*, 2005 U.S. Dist. LEXIS 37009, *16 (N.D. Cal. 2005) (Exhibit G). *See also Cel-Tech*, 20 Cal. 4th at 181 (in "restraining of all 'unfair' business practices," California's unfair competition law "undeniably establishes only a wide standard"). Between business competitors, "unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187.

---

[7] "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. As amended in 1992, § 17200 covers single acts of misconduct. *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 n.3 (1997).

[8] Section 17200 "borrows" violations of other laws and treats them as independently actionable "unlawful" unfair competition. *Farmers Ins. Exch. v. Sup. Ct.*, 2 Cal. 4th 377, 383 (1992). Conduct is "fraudulent" under § 17200 if it is likely to deceive members of the public. *Comm. On Children's Television v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983).

The Ninth Circuit long has recognized that "infringement actions initiated and conducted in bad faith contribute nothing to the furtherance of the policies of either the patent law or the antitrust law." *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 993 (9th Cir. 1979), *cert. denied*, 444 U.S. 1025 (1980). As the Ninth Circuit noted in *Handgards*, "[s]ubjecting a potential rival or actual rival to . . . (the burden of defending an infringement suit) may weaken him or even dissuade him from beginning or continuing the rivalry with the monopolist-patentee and perhaps without regard to the merits of the infringement claim." *Id.* n.12 (quoting 3 P. Areeda & D. Turner, Antitrust Law ¶ 708, at 145 (1978)). Thus, "[a]ntitrust law covers patent infringement lawsuits brought in bad faith."). *Acacia Media*, 2005 U.S. Dist. LEXIS 37009 at *18.[9]

In *Acacia Media* the plaintiff, New Destiny, alleged that Acacia Media, among other things, instituted a patent infringement lawsuit against New Destiny in bad faith. 2005 U.S. Dist. LEXIS 37009 at *18. New Destiny's counterclaims against Acacia Media included unfair competition under § 17200 and abuse of process. The Court held that Acacia Media's initiation of the patent infringement lawsuit against New Destiny could not form the basis of a counterclaim for abuse of process. *Id.* at *24. The Court also held, however, that New Destiny had stated a counterclaim under § 17200 because it alleged "conduct that 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws . . . , or otherwise significantly threatens or harms competition.'" Id. at *19-20. Although New Destiny alleged other improper conduct by Acacia Media as well, the Court's determination that New Destiny stated an unfair competition

---

[9] The mere filing of a lawsuit is privileged under the *Noerr-Pennington* doctrine, which provides that a party constitutionally is entitled to seek relief in the courts without exposure to antitrust liability or liability under other legal theories. *Noerr-Pennington* immunity does not apply, however, if the suit is a "sham." A lawsuit is a sham if it is objectively baseless -- such that no reasonable litigant realistically could have expected success on the merits -- and is intended to disrupt a competitor's business relations. *See generally Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). *See also Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998) (circumstances when litigation may be "sham" include (i) a single lawsuit that is objectively baseless and is a "concealed attempt to interfere with the plaintiff's business relationships" or (ii) intentional misrepresentations to the court that "deprive the litigation of its legitimacy").

counterclaim under § 17200 clearly was based substantially on the allegation that Acacia Media filed and was pursuing objectively baseless patent infringement litigation. *See* id. at *18-20.

*Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.*, 2007 U.S. Dist. LEXIS 22556 (N.D. Cal. 2007) (Exhibit H) also is instructive in the case at hand. In *Monolithic Power Systems*, Monolithic Power Systems ("MPS") initially filed in this district a declaratory judgment action with respect to one of O2 Micro's patents. 2007 U.S. Dist. LEXIS 22556 at *9. Five months later, O2 Micro responded by filing a patent infringement suit in the Eastern District of Texas accusing MPS of infringing a different O2 Micro patent, and later amended the complaint to include allegations that MPS' suppliers, customers and distributors infringed other O2 Micro patents as well. *Id.* at *10-11. After the Texas case was transferred to this district, MPS brought several counterclaims, including a counterclaim under California's unfair competition law against O2 Micro alleging, in part, that O2 Micro's assertion and enforcement of its patents was in bad faith. *Id.* at *9-11.

O2 Micro moved for summary judgment. O2 Micro did not dispute that, as held in *Acacia Media*, "pursuing patent infringement actions in bad faith is conduct that courts have found 'unfair' under California's Unfair Competition Law." *Monolithic Power Systems*, 2007 U.S. Dist. LEXIS 22556 at *18. O2 Micro asserted, however, that MPS proffered no evidence of bad faith or sham litigation, and no evidence that O2 Micro's activities are not immune from state tort liability under the *Noerr-Pennington* doctrine and California's litigation privilege, Cal. Civ. Code § 47(b). *Id.* at *18-19. Under the circumstances, including that O2 Micro ultimately prevailed at trial with respect to one of its patents, the Court found that MPS could not show that the initial commencement of the Texas case was objectively baseless. *Id.* at *22-24. The Court further found, however, that O2 Micro's *ongoing* pursuit of its infringement claims with respect to one of the patents that it had asserted in the Texas case "is objectively baseless and in bad faith and, therefore, this activity is not

immune and can be the basis for MPS' unfair competition claim." *Id.* at *24.[10]

Here, following the teaching of *Acacia Media*, Girafa did not institute a cause of action for abuse of process. However, also following the teaching of *Acacia Media*, as well as *Handgards*, *Monolithic Power Systems* and *Cell-Tech*, Girafa properly alleged its § 17200 unfair competition claim based on Alexa's bad faith institution of the Texas action.

As alleged in the complaint, the claims, specification and prosecution history of the '548 patent limit the claims of the '548 patent to metadata about a *currently displayed* web page; the claims, specification and prosecution history of the '548 patent therefore preclude any interpretation under which Girafa's technology could be considered infringement, inducement of infringement, or contributory infringement by Girafa's technology, which is about *linked* pages. Complaint ¶¶ 11-19.

Despite the clear inapplicability of the '548 patent to Girafa's technology, Alexa initiated the Texas action alleging that the Girafa Toolbar and Thumbnail Service infringes the '548 patent. Thus, rather than pursuing a legitimate claim on the merits, Alexa filed the Texas action to retaliate for Girafa's filing of the Delaware action and the PI Motion and to cause Girafa resources to be diverted during the pendency of the Delaware action to the unnecessary defense of the meritless action brought in bad faith in the Eastern District of Texas. Complaint ¶ 33. In short, knowing that continued infringement of the '904 patent may severely and irreparably damage Girafa within the year, Alexa filed the Texas action to put extreme financial pressure on Girafa to gain improper business and litigation advantages and attempt to force Girafa out of business. *Id.*

Accordingly, this action is based not just on the filing of a meritless lawsuit, but a bad faith sham lawsuit, brought in an attempt to force Girafa out of business or at least gain an unfair advantage in the Delaware action, when Alexa knew, or the most rudimentary pre-suit investigation

---

10 *See also Hi-Top Steel Corp. v. Lehrer*, 24 Cal. App. 4th 570, 582-83 (1994) (cause of action for unfair competition actionable under sham exception to *Noerr-Pennington* doctrine because defendants' administrative petitioning activity was brought with knowledge that it was groundless and to "disrupt plaintiffs' business by saddling them with onerous regulatory and administrative costs and burdens").

would have revealed, that Girafa does not infringe the '548 patent. If this conduct does not allege objectively baseless sham litigation intended to disrupt Girafa's business relations, or intentional misrepresentations to the Court that "deprive the litigation of its legitimacy," *Kottle*, 146 F.3d at 1060, nothing does.

Girafa does not purport to allege an antitrust violation. As recognized in *Handgards*, 601 F.2d at 993, however, such bad faith infringement actions "contribute nothing to the furtherance of the policies of either the patent law or the antitrust law." Accordingly, Alexa's filing of the Texas action, for improper purposes, without question violates the "policy or spirit" of the antitrust laws, and constitutes a wrongful attempt to threaten or harm competition. *Cel-Tech*, 20 Cal. 4th at 187; *Acacia Media*, 2005 U.S. Dist. LEXIS 37009 at *19-20. *See also Monolithic Power Systems* 2007 U.S. Dist. LEXIS 22556 at *18.

Defendants' reliance on *Pacific Gas and Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990) and *Rubin v. Green*, 4 Cal. 4th 1187 (1993) is unavailing. In *Pacific Gas and Electric*, the Court held that "a plaintiff seeking to state a claim for intentional interference with contract or with prospective economic advantage because defendant induced another to undertake litigation, must allege that the litigation was brought without probable cause and that the litigation concluded in plaintiff's favor." 50 Cal. 3d at 1137. In reaching this conclusion, however, the Court explicitly recognized the *Noerr-Pennington* doctrine exception for "sham petitions, brought without probable cause for the purpose of harassment." 50 Cal. 3d at 1133-34. As demonstrated herein, this case presents a classic example of such bad faith sham litigation.

Thus, despite the holding in *Rubin* that merely pleading a claim "under the unfair competition statute does not override the litigation privilege," 4 Cal. 4th at 1204, Girafa's unfair competition claim based on that bad faith sham litigation is fully cognizable. *See Monolithic Power Systems*, 2007 U.S. Dist. LEXIS 22556 at *24 (*Noerr-Pennington* doctrine and California litigation privilege did not shield bad faith ongoing pursuit of infringement claim from liability under the California unfair competition law); *Allergan Sales, Inc., v. Pharmacia & Upjohn, Inc.*, 1997 U.S. Dist. LEXIS 7648 *9-10 (S.D. Cal. 1997) (despite *Pacific Gas & Electric*, motion to dismiss

§ 17200 counterclaim alleging objectively baseless sham litigation denied) (Exhibit I). Defendants have cited no case applying *Pacific Gas and Electric* to bar an unfair competition claim premised on bad faith sham litigation.

Girafa plainly has alleged sufficient facts to support a cognizable legal theory under § 17200. And, as discussed below, those allegations are fully substantiated by the evidence.[11]

**2. <u>Alexa Initiated the Texas Action in Bad Faith</u>**

In order to convince the Patent Office to allow its ‘548 patent, Alexa told the Patent Office that its ‘548 patent claims do not cover certain prior art technology. But in asserting the ‘548 patent against Girafa in the Texas action, Alexa is now trying to cover the same technology that it had disavowed to the Patent Office. Exhibit B (August 14, 2008 Declaration of Dr. Brad A. Myers) at ¶¶ 23-41. Thus, Alexa can have no good faith basis to assert the ‘548 patent against Girafa, because Alexa previously disclaimed any coverage of the type of technology that Girafa offers.

In particular, Alexa repeatedly told the Patent Office that its claims cover a website that displays supplemental information (a.k.a. “metadata”) about that same website (*e.g.*, the number of visitors, the number of pages), but its claims do not cover a website that only displays supplemental information about other websites that are listed or hyperlinked on the displayed website (*e.g.*, search results). Exhibit B at ¶¶ 25-30. As Alexa repeatedly explained, “…. [m]etadata is ***supplemental information about the web page being displayed***, ***not about the target pages of links*** on the web page being displayed.” Exhibit B at ¶ 28 and Ex. C thereto at 24.

Girafa, however, does not provide any technology that displays “supplemental information about [a] web page being displayed.” Girafa only provides information (*i.e.*, thumbnails) about target

---

11 In ruling on a § 425.16 motion to strike, the Court is to “accept as true all evidence favorable to the plaintiff.” *Overstock.com, Inc.*, 151 Cal. App. 4th at 699-700 (affirming denial of motion to strike, including § 17200 claim).

pages of links on the web page being displayed (*e.g.*, search results). Thus, no good faith basis exists for asserting the '548 patent against Girafa.

**a. Claims and Specification of the '548 Patent**

The '548 patent contains independent claims 1, 29, 31, 34, 36-39, 44 and 45. Claim 1 is exemplary, as all of the independent claims contain corresponding limitations. Claim 1 recites:

> displaying, on the same display device as the web page and *concurrently with the web page, the automatically generated metadata* . . . .

'548 Patent at claim 1 (emphasis added).

Thus, inserting the definition of "metadata" from the prosecution history, claim 1 requires "displaying, on the same display device as the web page and concurrently with the web page, the [supplemental information about the web page being displayed]." Exhibit B at ¶¶ 28-29.

The specification of the '548 patent is consistent with the file history in stating that

> …the present invention allows the user to display metadata about the page currently being viewed via a browser.

'548 Patent at col. 9, ll. 41-43; Exhibit B at ¶¶ 23-24. As described in the '548 patent and shown in Fig. 8, for example, the '548 invention requires adding information about a displayed website, to that website ("WHERE YOU ARE"). *See* Exhibit B at ¶¶ 23-24 The supplemental information about the displayed website shown in Fig. 8 includes, for example, the three-star "POPULARITY" rating 802 and the fact that there are "800 pgs" within the website (elements 814 and 456). *See also* Exhibit B at ¶¶ 23-24.

U.S. Patent Aug. 28, 2001 Sheet 11 of 24 US 6,282,548 B1

800
WHERE YOU ARE
POPULARITY 802
☆☆☆ 810
2427 sites point in 812
ACCESS 804
800 pgs 814
Stale - 03/12/96 816
Fast
CONTACT 806
16 Smith Lane
Lancaster, PA 91674
(800)271-7865 818
Dow Jones
Fast Access
2,427 links in
800 pages
Wall Street Journal
USA Today
Washington Post
The New York Tim
456

Figure 8

b. **<u>Prosecution History of '548 Patent</u>**

The prosecution history of the '548 patent makes abundantly clear that technology like the Girafa thumbnail technology was disclaimed. In order to overcome prior art rejections during prosecution, Alexa filed an amendment on May 4, 1999. Exhibit B (Ex. C thereto at 4-13). In that Amendment, Alexa characterized an asserted prior art reference, U.S. Patent No. 5,706,507 to Schloss ("Schloss"), as follows:

> Schloss, at col. 10, lines 8-36, describes displaying a warning message that a ***link*** is to an offensive web page. This occurs under Schloss when a user is viewing a non-offensive web page (web page A), which contains a ***link*** to an offensive web page (web page B). Schloss then displays a warning that web page B is offensive.

Exhibit B (Ex. C thereto at 10) (emphasis added). The supplemental warning about the hyperlinked webpage is shown below in Fig. 12a of the '507 Schloss patent, as element 508. Exhibit B at ¶ 26. For illustrative purposes, hyperlink 504 has been highlighted in blue and the supplemental warnings 508 have been highlighted in yellow.



U.S. Patent
Jan. 6, 1998
Sheet 14 of 20
5,706,507
501
502
FAMILY VALUES
CONSUMER RPTS
506
506
500
WESTCHESTER PHOTOGRAPHY CLUB
508
NOT APPROPRIATE FOR MINORS–VIOLENT
505
508
507
FAMILY VALUES: X–RATED
504
503
CLICK HERE FOR VIOLENT PHOTO OF THE MONTH

FIG.12A

Alexa further explained that the technology of Schloss did not fall within the scope of Alexa's claims:

> This message [of Schloss] is not displayed concurrently with web page B, as web page B is not being displayed at all. The purpose of the warning message is to alert the user that web page B is offensive, so that the user does not attempt to access it. Of course, the ***message does not describe the web page being displayed,*** web page A, which is not offensive.
>
> ***
>
> The ***claimed invention*** is advantageous because, unlike Schloss, it provides a user with additional ***information about the current webpage***.

Exhibit B (Ex. C thereto at 10) (emphasis added).

> When Schloss prints a message warning the user that displayed link would lead to an offensive page, ***Schloss is not providing*** a link to the other page as ***information about the page being displayed***, but is ***instead providing information about the undisplayed page to which the link pertains***.

Exhibit B (Ex. C thereto at 11) (emphasis added).

> …. [m]etadata is supplemental information ***about the web page being displayed***, ***not about the target pages of links*** on the web page being displayed.

Exhibit B (Ex. C thereto at 24) (emphasis added).

**c. <u>Alexa's Knowledge of Girafa's Technology</u>**

Before filing the Texas action on March 21, 2008, Alexa most likely learned about Girafa's technology from visiting Girafa's website at www.Girafa.com, and/or from discovery in Girafa's lawsuit against Alexa. Both of these sources make clear that Girafa does not have any technology that displays "supplemental information about the web page being displayed" as required by Alexa's '548 patent.

As of service on March 13, 2008, Alexa was in possession of the declarations of both expert witness Dr. Brad A. Myers (Exhibit L), and Chief Operating Officer of Girafa, Ms. Shirli Ran (Exhibit C), before the filing of plaintiff's complaint in the Texas action on March 21, 2008. These declarations together provide an understanding of Girafa's technology more than ample to conclude that the subject matter of the '548 patent is fundamentally different from Girafa's technology, and

cannot support an argument of infringement. Furthermore, Alexa has been aware of Girafa's website at least since December 2007, when Girafa filed its Delaware action.

Dr. Myers' summary of the '904 patent explains that the Girafa technology provides "a way to present a web page in a browser, and at the same time, present thumbnail images ***of other*** web pages that are hyperlinked from the web page." Exhibit L at ¶ 37 (emphasis added); *see also id.* ¶¶ 37, 38, 39. Generally, each thumbnail image shown is a small image of a web page of the target web site pointed to by a hyperlink in the displayed web page. *Id.*; *see also* Exhibit B at ¶¶ 32-40. Thus, Girafa's technology allows a user viewing a web page to see thumbnail images of various target web pages that are linked-to the page viewed by the user. *Id.* For example, in the figures below, the Girafa website is being displayed, along with thumbnails of target web pages that are listed as links on Girafa's displayed website (Hertz and eBay thumbnails). Exhibit B at ¶ 38. In the figures below, the Hertz and eBay thumbnails are not supplemental information about the Girafa web page; they are "information about the undisplayed page to which the link pertains," and that is the distinction that Alexa used to distinguish over the prior art Schloss patent. Exhibit B at¶¶ 32-41.

**d. Alexa Cannot Assert Infringement of the '548 Patent in Good Faith**

Alexa's clear and unequivocal disclaimer of Girafa's technology as being outside the scope of the claims of the '548 patent precludes any possibility of infringement. Exhibit B at ¶¶ 30, 34-41. A fundamental distinction is found in the requirement that the "… metadata [be] supplemental information about the web page to be displayed." Exhibit B at ¶¶ 28-30, 34-35.

In contrast to this requirement of claim 1, the Girafa technology "present[s] thumbnail images of other web pages that are hyperlinked from the web page," as summarized by Dr. Myers. Exhibit L at ¶ 37; Exhibit B at ¶¶ 33-34. Thus, Girafa does not provide metadata "about the webpage to be displayed;" rather, Girafa provides metadata about webpages hyperlinked from the webpage to be displayed. Exhibit B at ¶¶ 34-35.

Moreover, in order to cover Girafa's technology, the '548 claims would have to be construed to also cover Schloss, but that construction was disclaimed by Alexa in the amendment of May 4, 1999, and therefore is barred as a matter of law. Exhibit B at ¶ 30; *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) ("The doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution."). The Federal Circuit also has adopted prosecution disclaimer "as a fundamental precept in [its] claim construction jurisprudence." *Id.* The doctrine of prosecution disclaimer applies "where the patentee has unequivocally disavowed a certain meaning to obtain his patent" and "narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Id.* at 1324.

Like the technology of Schloss, Girafa's technology is directed to providing further information to a user about a page pointed to by a link. Exhibit B at ¶¶ 30, 34. As illustrated by the Hertz and eBay thumbnails on the previous page, Girafa's technology simply provides information about "target pages of links on the web page being displayed" which the inventors specifically disavowed. Exhibit B at ¶¶ 30, 34, 35, 38-41. Thus, the similarity between Schloss and Girafa's technology could not be more clear: both provide information about webpages that are hyperlinks in

 

a currently displayed webpage, and neither provides the claimed supplemental information about the displayed webpage. Exhibit B at ¶¶ 30, 34.

Accordingly, Alexa's attempt to assert claims of the '548 patent against Girafa necessarily is precluded by Alexa's repeated and emphatic disclaimers in the prosecution history of the '548 patent. Exhibit B at ¶¶ 30, 34. Knowing full well that the '548 patent does not cover Girafa's technology, Alexa's allegations of infringement in the Texas action necessarily are objectively baseless, and the only reasonable inferences are that they are intended to hinder Girafa's defense in the Delaware action and are made in an attempt to drive Girafa out of business.[12] In short, it is bad faith, sham litigation that, even if it does not explicitly violate the antitrust laws, violates the "policy or spirit" of those laws "or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. Clearly competition would suffer if Alexa were to succeed in improper attempt to divert Girafa resources from protecting its interests in the Delaware action or in its attempt to put Girafa out of business. Alexa's conduct falls well within the ambit of § 17200.

## IV. CONCLUSION

Alexa's allegations of patent infringement in the Texas action are the types of representations of fact about a competitor's goods or service that, pursuant to § 425.17(c), explicitly have been excepted from § 425.16 motions to strike. Even if the Court were to consider Alexa's § 425.16 motion on the merits, Girafa's allegations and evidence with respect to the bad faith litigation initiated by Alexa are more than sufficient to demonstrate "the 'requisite minimal merit' to allow the lawsuit to proceed." *Brill Media*, 132 Cal. App. 4th at 328. Girafa's right to assert Alexa's wrongful conduct as a basis of liability should not be chilled, and the motion to strike should be denied.

Moreover, under the circumstances (including at least two cases in this district explicitly supporting Girafa's unfair competition claim), defendants' § 425.16 motion is "totally and

---

12 *See* Exhibit C at ¶¶ 4, 24, 25, 26, 28.

completely without merit" pursuant to Cal. Code Civ. Pro. § 128.5(b)(2) and, accordingly, an award of attorney fees should be assessed against defendants for bringing the motion. *See Moore v. Shaw*, 116 Cal. App. 4th 182, 199 (2004) (fees appropriate when "any reasonable attorney would agree that such motion is totally devoid of merit") (quoting *Decker v. U.D. Registry, Inc.*, 105 Cal. App. 4th 1382, 1392 (2003)).[13]

DATED: August 15, 2008

SUGHRUE MION, PLLC

By: *s/ John B. Scherling*

John B. Scherling
Scott H. Davison
101 West Broadway, Suite 1600
San Diego, CA 92101

William H. Mandir (admitted *pro hac vice)*
John F. Rabena (admitted *pro hac vice)*
Carl Pellegrini (admitted *pro hac vice)*
Chandran B. Iyer (admitted *pro hac vice*)
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037

Attorneys for Plaintiff
GIRAFA.COM, INC.

[13] As required by Cal. Code Civ. Pro. § 425.16(j), a copy of the caption page of this opposition will be forwarded to the Judicial Council.