**E-FILED on** _____10/6/2008_____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GIRAFA.COM, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALEXA INTERNET, INC.; NIALL O'DRISCOLL,<br><br>　　　　Defendants. | No. C-08-02745 RMW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER; AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM<br><br>**[Re Docket Nos. 31, 34, 36]** |

　　　　Defendants Alexa Internet, Inc. ("Alexa") and Niall O'Driscoll ("O'Driscoll") move to dismiss, transfer to the Eastern District of Texas, or stay the present action. Defendants simultaneously move to dismiss the plaintiff's third claim for relief and to strike the third claim under California's Code of Civil Procedure 425.16. Plaintiff Girafa.com, Inc. ("Girafa") opposes the motions. For the reasons set forth below, the court grants the defendants' motion to dismiss Girafa's third claim and accordingly grants the special motion to strike. The court also grants the motion to stay but denies the defendants' motion to dismiss or transfer.

ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER;
AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM
No. C-08-02745 RMW
LL / TSF

# I. BACKGROUND

This action is the third in a series of suits between Girafa and Alexa. Decl. of John B. Scherling ("Scherling Decl."), Exs. D & E. In the first suit, Girafa filed a complaint on December 5, 2007 in the U.S. District Court for the District of Delaware alleging infringement by several parties, among them Alexa (the "Delaware Action"). Scherling Decl., Ex. D at 1. The patent in suit for the Delaware Action is U.S. Patent No. 6,864,904 ("the '904 patent"). *Id.* ¶ 1. As part of the Delaware Action, Girafa filed a motion for preliminary injunction against Alexa on March 13, 2008. Scherling Decl., Ex. O. Alexa initiated the second suit on March 21, 2008 in the U.S. District Court for the Eastern District of Texas (the "Texas Action"). Scherling Decl, Ex. E at 1. Alexa alleges that Girafa infringes U.S. Patent No. 6,282,548 ("the '548 patent"). *Id.* ¶¶ 10-21.

The third and present action was filed in this district on June 2, 2008. Girafa's lawsuit seeks a declaration of non-infringement and a declaration of invalidity of the '548 patent, the patent from Alexa's Texas Action. Compl. ¶¶ 21-31. Girafa also alleges that Alexa and O'Driscoll have violated California's unfair competition law by filing a baseless patent infringement lawsuit with the intent of driving Girafa out of business. Compl. ¶¶ 32-35. Specifically, Girafa alleges a number of facts that cast doubt on the viability of Alexa's infringement claims in the Texas Action. *See* Compl. ¶¶ 10-19. Girafa further alleges that Alexa brought the Texas Action "without a good faith belief in the merits," "in retaliation for Girafa's filing of the Delaware Action," and to divert Girafa's resources to "defending meritless sham litigation." Compl. ¶ 9.

Defendants Alexa and O'Driscoll move to dismiss the present action on the basis that the Texas Action was first filed. Alternatively, the defendants move to transfer this action to the Eastern District of Texas under 28 U.S.C. § 1404(a). *Id.* at 2, 5. As a third alternative, the defendants request a stay. In a pair of parallel motions, the defendants also move to dismiss Girafa's unfair competition claim and to strike the same claim under California's anti-SLAPP statute.

Girafa asks the court to deny Alexa and O'Driscoll's motions. Further, Girafa filed a motion on June 6, 2008 to transfer the Texas Action to the Northern District of California. Decl. of M. Elizabeth Day ¶ 6.

ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER; AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM
No. C-08-02745 RMW
LL / TSF                    2

## II.  ANALYSIS

Because the viability of Girafa's unfair competition claim has some bearing on the other two motions, the court begins by discussing that.

### A.  The Motion to Dismiss Girafa's Unfair Competition Claim

Alexa and O'Driscoll move to dismiss Girafa's third claim alleging a violation of California Business & Professions Code § 17200 for failure to state a claim.  Girafa responds that it has adequately alleged a section 17200 claim because it has alleged that Alexa and O'Driscoll have initiated sham litigation in the Eastern District of Texas with the intent of harming Girafa's business.

"The word 'unfair' in [section 17200] means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 187 (1999).  This requires an "actual or threatened impact on competition," not just harm to a competitor. *Id.* at 186-87.

Sham litigation is litigation that is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and that is subjectively intended to harm a competitor's business. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993).  Establishing these two elements of a sham lawsuit "merely deprives the defendant of immunity" based on its constitutional right to access the courts. *Id.* at 61.  "[I]t does not relieve the plaintiff of the obligation to establish all other elements of his claim." *Id.*  Thus, sham litigation may constitute anticompetitive conduct, but a plaintiff must still establish the other familiar elements of a section 2 claim like proving that a defendant has monopoly power within a relevant market. *Verizon Comm'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).[1]

---

[1] Establishing that Alexa has engaged in sham litigation would not appear to support a section 1 claim because there is no "contract, conspiracy or combination" between two entities. *See* 15 U.S.C. § 1.  O'Driscoll is Alexa's CEO, and as its agent, cannot "conspire" with Alexa in violation of section 1.

ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER; AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM
No. C-08-02745 RMW
LL / TSF                                   3

On their face, Girafa's allegations appear to support that Alexa and O'Driscoll have engaged in sham litigation, and therefore some anticompetitive conduct.  But Girafa's complaint makes no further allegations that would establish a *prima facie* case of monopolization or attempted monopolization by Alexa.  Without such allegations, Girafa has not alleged "an incipient violation of the antitrust law" that would support a section 17200 claim.  Likewise, without such allegations, Girafa cannot establish that Alexa's conduct "otherwise significantly threatens or harms competition."  To be sure, Alexa's conduct threatens its *competitor* Girafa, but that is not the same as threatening *competition*.  *See Cel-Tech*, 20 Cal. 4th at 186.[2]

Girafa cites a number of cases suggesting that it can establish a section 17200 claim based on Alexa's alleged sham litigation alone.  First, Girafa cites *In re Acacia Media Technologies Corp.*, which held that a plaintiff stated a claim under section 17200 based on allegedly sham patent litigation.  2005 WL 1683660, *4-*5 (N.D. Cal. Jul. 19, 2005) (Ware, J.).  While the *Acacia* decision is not clear on this point, the plaintiff there had alleged a pervasive course of allegedly baseless lawsuits and threats, namely that Acacia "filed and [prosecuted] objectively baseless patent infringement lawsuits, without pre-suit investigation against Defendant and others in Defendant's industry."  *Id.* at *5.  From that broad scope of allegedly sham activity, it is possible to infer that the plaintiff's complaint alleged a relevant market (perhaps the market for internet adult entertainment) and at least a dangerous probability that Acacia would gain monopoly power in that market from its anticompetitive sham litigation.  Thus, *Acacia* does not necessarily support the principle that Girafa can bring an unfair competition claim based solely on sham litigation without alleging the other elements of a section 2 claim.

Girafa also relies on *Monolithic Power Systems, Inc. v. O2 Micro International Ltd.*, another case involving patent litigation where "O2 Micro continue[d] to pursue its '615 patent claims against ASUSTeK, Compal, Hon Hai and Samsung, despite clear collateral estoppel."  2007 WL 801886, *5

---

[2] This does not leave Girafa lacking a remedy.  If Alexa's litigation ends in Girafa's favor and was as baseless as Girafa suggests, Girafa can bring a claim for malicious prosecution.  *See Pac. Gas & Elec. Co. v. Bear, Stearns & Co.*, 50 Cal.3d 1118, 1130-31 (1990) (explaining the elements of a malicious prosecution claim).

ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER; AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM
No. C-08-02745 RMW
LL / TSF                                                4

(N.D. Cal. Mar. 14, 2007) (Wilken, J.). The court held that continuing to litigate the '615 patent could strip O2 Micro's litigation of its constitutional immunity and that "this activity . . . can be the basis for MPS' unfair competition claim." *Id.* at *5. There is nothing controversial in *Monolithic*'s holding that baseless litigation can form the basis for an unfair competition claim. But the *Monolithic* decision does not address the additional elements of an unfair competition claim, namely some proof of harm to *competition*, and thus does not help Girafa's argument here.

Finally, Girafa points to *Hi-Top Steel Corp. v. Lehrer*, 24 Cal. App. 4th 570 (1994). In *Hi-Top Steel*, the California Court of Appeal held that a plaintiff had stated an unfair competition claim based purely on the defendant's sham petitioning activity. 24 Cal. App. 4th at 578, 582-83. In *Cel-Tech,* the California Supreme Court emphasized "the need for California businesses to know, to a reasonable certainty, what conduct California law prohibits and what it permits." 20 Cal. 4th at 185. To that end, the Court "devise[d] a more precise test for determining what is unfair under the unfair competition law." *Id.* Thus, the Court adopted the requirement that an "unfair" business practice is one that threatens a violation of the antitrust laws or similar harm to competition. *Id.* at 187. The *Hi-Top Steel* decision predates the *Cel-Tech* decision, and thus failed to apply the current test that requires showing more than just harm to a competitor.

Because Girafa has not alleged the additional elements required to plead "an incipient violation of the antitrust law" to support its section 17200 claim, the court grants Alexa and O'Driscoll's motion to dismiss.

**B.     The Motion to Strike the Unfair Competition Claim**

Alexa and O'Driscoll invoke California's anti-SLAPP law in also moving to strike Girafa's unfair competition claim.

Two statutory sections frame the court's inquiry. The first is California's anti-SLAPP law, which permits defendants to file a special motion to strike claims based on the exercise of the defendant's freedom of speech or petition. California enacted the law because of "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" and "to encourage continued

ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER;
AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM
No. C-08-02745 RMW
LL / TSF                                                                       5

1  participation in matters of public significance." Cal. Civ. Proc. Code § 425.16(a). Thus, the law
2  requires the court to grant a motion to strike any claim "arising from any act . . . in furtherance of the
3  person's right of petition . . . in connection with a public issue[.]" *Id.* § 425.16(b)(1).[3] A court may
4  only deny such a motion if "the plaintiff has established a probability that the plaintiff will prevail
5  on the claim." *Id.* As discussed above, the court has dismissed Girafa's unfair competition claim
6  based on Alexa's pursuit of the Texas Action. While Girafa might be able to amend its claim to
7  allege some harm to competition, it has not yet done so, and the court's "probability" determination
8  is limited to the pleadings and declarations on file. *Id.* § 425.16(b)(2). Therefore, the court must
9  conclude that Girafa has no probability of success on its claim and that the claim should be stricken.

10  The second statutory section is the exception to the anti-SLAPP law, section 425.17. After a
11  decade of practice under the anti-SLAPP law, the Legislature found that there had been a "disturbing
12  abuse of Section 425.16" and that the special motion to strike designed to protect constitutional
13  rights was "undermin[ing] the exercise of constitutional rights of freedom of speech and petition[.]"
14  Cal. Civ. Proc. Code § 425.17(a). The Legislature did not repeal the anti-SLAPP law though.
15  Instead, it crafted two narrow[4] exceptions to the anti-SLAPP law, of which Girafa invokes the latter,
16  section (c).

17  To begin, this exception applies only to persons "primarily engaged in the business of selling
18  or leasing goods or services." Cal. Civ. Proc. Code § 425.17(c). The parties do not dispute that
19  Alexa and O'Driscoll satisfy this condition. Next, the moving defendant has the burden of
20  establishing that its alleged conduct does not satisfy one of two elements. *Brill Media Co., LLC v.*
21  *TCW Group, Inc.*, 132 Cal. App. 4th 324, 331 (2005). First, the moving defendant may show that its

---

[3]  Given the tenor of the Legislature's findings, it is difficult to imagine that it contemplated that a series of patent disputes between two companies would represent the exercise of the right to petition "in connection with a public issue." However, the law specifically defines this phrase as including "any written or oral statement or writing made before a . . . judicial proceeding." Cal. Civ. Proc. Code § 425.16(e)(1). Thus, Alexa's litigation in Texas qualifies for protection under the anti-SLAPP law.

[4]  The court refers to the exceptions as "narrow" based on their use of highly specific language, and also because section 425.16 contains a mandate to the courts to interpret the section "broadly." Cal. Civ. Proc. Code § 425.16(a). Section 425.17 lacks any similar directive.

ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER; AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM
No. C-08-02745 RMW
LL / TSF                                                6

1 conduct does not "consist[] of representations of fact about that person's or a business competitor's
2 business operations, goods, or services, that is made for the purpose of obtaining approval for,
3 promoting, or securing sales or leases of, or commercial transactions in, the person's goods or
4 services, or the statement or conduct was made in the course of delivering the person's goods or
5 services." *Id.* § 425.17(c)(1). Alternatively, the moving defendant may also escape this limit on its
6 ability to file a special motion to strike by showing that the "intended audience" of the conduct is not
7 "an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise
8 influence, an actual or potential buyer or customer[.]" *Id.* § 425.17(c)(2). If the moving defendant
9 establishes either of these prongs, then section 425.17 does not bar the special motion to strike.

10       Alexa and O'Driscoll argue that section 425.17 does not apply under either prong. First,
11 Alexa argues that its prosecution of patent litigation in the Eastern District of Texas does not
12 constitute "a representation of fact" regarding Girafa's services. The California Court of Appeal has
13 held that a defendant's "act of filing [an] underlying action for defamation and unfair competition
14 does not constitute 'representations of fact about [defendants'] or a business competitor's business
15 operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or
16 securing sales or leases of, or commercial transactions in, the [defendants'] goods or services' to
17 ultimately influence an actual or potential customer within the meaning of section 425.17,
18 subdivision (c).'" *Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1053
19 (2007). The *Contemporary Services* case, however, contains no explanation for its reasoning. It is
20 unclear whether the court considered the underlying lawsuit to not be a "representation of fact" or
21 whether the court held that a lawsuit is not "made for the purpose of [selling] the defendant's goods
22 or services. It seems that an allegation in a complaint about a competitor's conduct would be a
23 representation of fact about that competitor's goods or services. It is a greater stretch to interpret
24 making those representations in a lawsuit to be "for the purpose of . . .promoting or [selling]" goods
25 or services.

26       Girafa urges that by filing an allegedly sham lawsuit, Alexa hopes to drive Girafa out of
27 business, and thus increase its sales. But Girafa's argument is not tethered to the statutory text. The
28

ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER;
AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM
No. C-08-02745 RMW
LL / TSF     7

1  reason that Alexa's patent litigation could fall within section 425.17(c) at all is that Alexa's
2  complaint makes a "representation of fact" regarding Girafa's services, namely, that those services
3  infringe Alexa's patent.  While this statement is made in the context of litigation, the 425.17(c)
4  analysis turns on the purpose of the representation, not the purpose of the representation's context.
5  In other words, it is not relevant to 425.17(c)(1) whether Alexa claimed that Girafa's service
6  infringes in a lawsuit or on a weblog.  What matters is whether the representation was made for the
7  purpose of increasing sales.  And on this, the court cannot agree that the representations contained in
8  Alexa's complaint were made for the purpose of obtaining sales.  The representations were made to
9  plead a claim for patent infringement with the hope of recovering damages or enjoining
10 infringement.  That those results of  litigation (or the litigation process itself) might increase Alexa's
11 sales is too attenuated.  The court therefore finds that Alexa has shown that 425.17(c)(1) does not
12 apply, and there is therefore no bar to its special motion to strike.
13     In the alternative, Alexa also argues that section 425.17 does not apply because the "intended
14 audience" of its representations about Girafa's services is not "an actual or potential buyer or
15 customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential
16 buyer or customer."  Alexa contends that the only intended audience of its allegations is the court in
17 the Eastern District of Texas.  Girafa disagrees, pointing out that patent lawsuits are public news and
18 that it was also an intended audience of Alexa's allegations, and that it is a potential customer of
19 Alexa's because it could license Alexa's patent.  It is reasonable to believe that the defendant in a
20 lawsuit is an "intended audience" of the representations made in a complaint.  However, while the
21 evidence in the record is thin, it does not appear that Alexa is in the business of licensing its patents.
22 On the contrary, it and Girafa appear to be in the business of providing services to websites and
23 internet users.  Thus, while the "intended audience" of the representations in the complaint is
24 broader than just the court, the audience does not consist of customers for web services.
25     Accordingly, the court finds that Alexa has established that neither prong of section
26 425.17(c) is applicable, and the section therefore does not bar its special motion to strike.  Since
27
28

ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER;
AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM
No. C-08-02745 RMW
LL / TSF                                    8

1  section 425.17 does not apply and Girafa has no probability of success on its dismissed claim for
2  unfair competition, the court grants the special motion to strike.

### C. The Motion to Dismiss, Transfer, or Stay

Alexa and O'Driscoll move to dismiss, transfer, or stay this action on the basis that the Texas Action was first filed. Alternatively, the defendants move to transfer this action to the Eastern District of Texas under 28 U.S.C. § 1404(a). Girafa responds that exceptions to the first-to-file rule exempt this suit and a transfer under § 1404(a) is not warranted on the basis of improper venue and for reasons of convenience.

#### 1. The First-to-File Rule

The first-to-file rule allows a district court to transfer, stay, or dismiss an action when a similar complaint has been filed in another federal court. *Z-Line Designs, Inc v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 1994); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The first-to-file rule normally promotes efficiency. *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979). It does so by avoiding the waste of duplication, conflicting rulings, and piecemeal resolution of issues. *Panasonic Corp. of N. Am. v. Patriot Scientific Corp.*, No. C 05-4844, 2006 WL 709024, at *2 (N.D. Cal. Mar. 16, 2006) (Jenkins, J.) (citing *Colorado River Conser. Dist. v. U.S.*, 424 U.S. 800 (1976)). In applying the first-to-file rule, a court considers three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Z-Line Designs*, 218 F.R.D. at 665; *Alltrade*, 946 F.2d at 625-626.

In *Pacesetter Systems, Inc. v. Medtronic, Inc.*, the Ninth Circuit affirmed a district court's application of the rule to dismiss a second-filed California case. 678 F.2d 93, 94 (9th Cir. 1982). In the first-filed case, Medtronic brought a suit against Pacesetter in Florida for allegedly infringing Medtronic's patents. *Id.* at 94. Subsequently, Pacesetter sought a declaration of invalidity and non-infringement of the same patents in California. *Id.* The California district court determined that all three threshold factors were met and dismissed the second-filed case. *Id.* On appeal, the Ninth Circuit found the lower court did not abuse its discretion in applying the rule. *Id.*

This court recently applied the first-to-file rule in *Intuitive Surgical, Inc. v. Calif. Inst. of Tech*. 2007 WL 1150787 (N.D. Cal. Apr. 18, 2007) (Wilken, J.). There, the patent holder sued Intuitive Surgical for infringement in the Eastern District of Texas. *Id.* at *1. Subsequently, but on the same day, Intuitive sought declaratory relief in this district for the same patents. The court found the first-to-file rule applicable, despite the near simultaneous filings of the two suits. *Id.* at *3. The court concluded that the sound policy rationale of the rule justified its application and chose to stay the second-filed case pending an anticipated motion in the Texas court to transfer the first-filed case to this district. *Id.*

The application of the first-to-file doctrine is discretionary. *Alltrade*, 946 F.2d at 627-28. "[W]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Id*. For reasons of equity, the district court can exercise its discretion and not apply the rule. *Id.* at 628. The circumstances under which a court may decline to follow the first-to-file rule include bad faith, anticipatory breach, and forum shopping. *Id.* (citations omitted). But, the court is permitted an "ample degree of discretion" in determining whether or not to exercise an exception to the rule. *Id.* (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952)).

### 2.     **Application of the First-to-File Rule**

The court first examines the chronology of the parties' dispute. Alexa initially filed the Texas Action on March 21, 2008 alleging that Girafa infringed the '548 patent. Girafa filed this case two and a half months later on June 2, 2008 seeking declaratory judgment of non-infringement and invalidity of the '548 patent. Though the parties also are litigating in Delaware, that case involves an unrelated patent. It is therefore not relevant to determining how to apply the first-to-file rule here.

The court next considers the similarity of the parties in the two lawsuits. With the dismissal of the unfair competition claim, O'Driscoll is no longer a party in the suit. The two remaining claims are declaratory judgment actions against only Alexa. As such, the only remaining parties are Girafa and Alexa, the same parties in the Texas Action.

Finally, the court examines the similarity of the issues in the two lawsuits. This factor is satisfied by a "*sufficient* similarity of issues." *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc*, 544 F. Supp. 2d 949, 959-60 (N.D. Cal. 2008) (citations removed). The test has two parts:

> (1) are the two pending actions so duplicative or involve substantially similar issues that one court should decide the issues; and (2) which of the two courts should resolve the case? The issues need not be identical to allow one court to decide the action, but there must be "substantial overlap between the two suits."

*Id*.

The present action meets both parts of the test. First, this action involves substantially similar issues as the Texas Action because both involve the infringement and validity of the same patent. Second, there is a substantial overlap between the two suits. Girafa attempts to distinguish the instant action from the Texas Action because here it asserts a claim for unfair competition. As discussed, this claim has been dismissed. The two cases thus clearly meet the similarity of issues requirement for application of the first-to-file rule.

### 3.     No Exceptions Bar the First-to-File Rule

The court next considers whether there should be an exception to applying the first-to-file rule. Girafa alleges that Alexa filed the Texas Action in bad faith. Specifically, Girafa alleges that the Texas Action is frivolous and that the venue has "virtually no connection to the parties, witnesses or evidence." Opp. at 5:19-6:1. Girafa further contends that: (1) Alexa commenced the Texas Action to gain leverage over Girafa; (2) the Texas lawsuit makes it more difficult for Girafa to gather and present relevant evidence at trial; and (3) Alexa has no reasonable expectation of a favorable outcome. Opp. at 6:1-7.

Girafa misapprehends the "bad faith" exception to the first-to-file rule. The bad faith illustrated by the allegations above goes to the merits of the lawsuit, but says nothing about whether the Texas Action was filed *first* due to bad faith. For example, had Alexa intimated that it would not sue to delay Girafa's declaratory judgment complaint but then sued in Texas to have initiated the first action, that would constitute the bad faith contemplated by the first-to-file rule. The alleged bad faith here, on the other hand, is irrelevant.

Girafa next argues that the lawsuit is "a text book example of forum shopping" on the basis that neither party has offices, employees, or property in Texas. Opp. at 6. While some factors may favor California as a more convenient forum, this argument carries little weight. Girafa allegedly infringes the '548 patent by offering its Girafa Toolbar and Girafa Thumbnail Service to Internet users in the Eastern District of Texas. Opp., Ex. A at 2. Consequently, Alexa has a good faith argument for bringing this suit in Texas. If California is the most convenient forum, it is for the Texas court to transfer its case here.

Lastly, Girafa argues this court should apply a convenience exception. The analysis to determine which court is more convenient should be performed by the first-filed court. *Alltrade*, 946 F.2d at 628 ("As for the respective convenience of the two courts, 'normally [this argument] should be addressed to the court in the first filed action.' . . . The court in the second-filed action is not required to duplicate this inquiry."). Accordingly, this court does not make any decision regarding convenience.

To be clear, this ruling does not bar Girafa from presenting these arguments before the Texas court. The Texas court is capable of efficiently resolving these issues. For the sake of judicial economy and to prevent conflicting outcomes, the court finds no exceptions to the first-to-file rule apply.

### 4. Dismissal, Stay, or Transfer

Because Girafa's motion to transfer the Texas Action to the Northern District of California is pending, this court stays the present action. *Alltrade*, 946 F.2d at 629 n. 16 ("[A] stay may, for example, be appropriate to permit the court of first filing to rule on a motion to transfer.") (citations omitted); *see Intuitive Surgical*, 2007 WL 1150787, at *3 (staying action pending first-filed court's ruling on anticipated motion to transfer). If the Texas court denies Girafa's motion to transfer, Alexa may renew its request to dismiss or transfer this action.

### III. ORDER

For the foregoing reasons, Alexa and O'Driscoll's motion to dismiss Girafa's third claim for relief is granted. The court also orders the third claim stricken pursuant to California Code of Civil Procedure section 425.16.

Alexa and O'Driscoll's motion to stay the present action is granted pending the resolution of Girafa's motion to transfer in the Texas court. The motions to dismiss or transfer are denied. The stay does not apply to an application for attorney's fees pursuant to section 425.16.

The court sets a case management conference for December 12, 2008 at 10:30 am to address the status of the Texas Action, absent a renewed motion to dismiss or transfer.

DATED: 10/6/2008

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

John Scherling         jscherling@sughrue.com
Scott Davison          sdavison@sughrue.com

**Counsel for Defendants:**

Elizabeth Day          elizabeth.day@dlapiper.com
Gregory Lundell        greg.lundell@dlapiper.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      10/6/2008                              TSF
                                              **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER;
AND GRANTING MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S THIRD CLAIM
No. C-08-02745 RMW
LL / TSF                                      14